# Exhibit A



# STANDARD SUBLEASE
# MULTI-TENANT

**1.    Basic Provisions ("Basic Provisions").**

1.1    **Parties**: This Sublease (**"Sublease"**), dated for reference purposes only ___April 15, 2020___ , is made by and between ___Futurewei___ ___Technologies, Inc., a Texas corporation___ ("**Sublessor**") and ___Zovio, Inc., a Delaware corporation___ ("**Sublessee**"), (collectively the "**Parties**", or individually a "**Party**").

1.2(a)    **Premises**: That certain portion of the Project (as defined below), commonly known as (street address, unit/suite, city, state) ___10180___ ___Telesis Court, Suite 400, San Diego, CA 92121___ ("**Premises**"). The Premises are located in the County of ___San Diego___ and consist of approximately ___19,143___ square feet. In addition to Sublessee's rights to use and occupy the Premises as hereinafter specified, Sublessee shall have nonexclusive rights to the Common Areas (as defined below) as hereinafter specified, but shall not have any rights to the roof, the exterior walls, or the utility raceways of the building containing the Premises ("**Building**") or to any other buildings in the Project. The Premises, the Building, the Common Areas, the land upon which they are located, along with all other buildings and improvements thereon, are herein collectively referred to as the "**Project**."

1.2(b)    **Parking**: ___4___ unreserved and ___0___ reserved vehicle parking spaces.

1.3    **Term**: ___4___ years and ___10___ months commencing ___5/1/20___ ("**Commencement Date**") and ending ___2/28/2025___ ("**Expiration Date**").

Neither Party shall have the right to terminate this Sublease prior to the Expiration Date, except pursuant to any termination right expressly stated in the Master Lease (to the extent incorporated into this Sublease). If Sublessee terminates this Sublease prior to the Expiration Date when it has no express right to do so, Sublessee shall be liable for the unpaid Base Rent up to the date of termination, and for the unpaid Base Rent owed for the remainder of the term of this Sublease, to the extent provided in Section 10(a)(C) of the Master Lease. Neither Party shall have the right to extend the Term of this Sublease beyond the Expiration Date. Upon the Expiration Date, Sublessee shall have the right, at its sole discretion, to enter into a new lease agreement with Master Lessor.

1.4    **Early Possession**: If the Premises are available Sublessee may have non-exclusive possession of the Premises commencing ___4/1/2020___ ("**Early Possession Date**").

1.5    **Base Rent**: ___$2.50___ per RSF per month ("**Base Rent**"), payable on the ___First___ day of each month commencing ___5/1/2020___ .

☑ If this box is checked, there are provisions in this Sublease for the Base Rent to be adjusted.

1.6    **Sublessee's Share of Operating Expenses**: ___Refer to the Lease Addendum___ percent (_____%) ("**Sublessee's Share**"). In the event that the size of the Premises and/or the Project are modified during the term of this Lease, Lessor shall recalculate Lessee's Share to reflect such modification.

1.7    **Base Rent and Other Monies Paid Upon Execution:**

(a)    **Base Rent**: ___$47,858.00___ for the period ___5/1/2020 – 5/31/2020___ .

(b)    **Security Deposit**: ___$53,864.00___ ("**Security Deposit**").

(c)    **Other**: _____ for _____ .

(d)    **Total Due Upon Execution of this Lease**: ___$101,722.00___ .

1.8    **Agreed Use**: The Premises shall be used and occupied only for ___Office space for an online education company___ and any other use permitted under the Master Lease and for no other purposes.

1.9    **Real Estate Brokers.**

(a)    **Representation**: Each Party acknowledges receiving a Disclosure Regarding Real Estate Agency Relationship, confirms and consents to the following agency relationships in this Lease with the following real estate brokers ("**Broker(s)**") and/or their agents ("**Agent(s)**"):

Sublessor's Brokerage Firm ___Cushman & Wakefield___ License No. ___01329963___ is the broker of (check one): ☑ the Sublessor; or ☐ both the Sublessee and Sublessor (dual agent).

Sublessor's Agent ___Bob Cowan/Mike Novkov___ License No. ___01838109/01890388___ is (check one): ☑ the Sublessor's Agent (salesperson or broker associate); or ☐ both the Sublessee's Agent and the Sublessor's Agent (dual agent).

Sublessee's Brokerage Firm ___CBRE___ License No. _____ is the broker of (check one): ☑ the Sublessee; or ☐ both the Sublessee and Sublessor (dual agent).

Sublessee's Agent ___Tom Martinez / Tom Turner___ License No. ___00933044 / 02079307___ is (check one): ☑ the Sublessee's Agent (salesperson or broker associate); or ☐ both the Sublessee's Agent and the Sublessor's Agent (dual agent).

(b)    **Payment to Brokers**: Upon execution and delivery of this Sublease by both Parties, Sublessor shall pay to the Brokers the brokerage fee agreed to in a separate written agreement (or if there is no such agreement, the sum of _____ or ___6___ % of the total Base Rent) for the brokerage services rendered by the Brokers.

1.10    **Guarantor**. The obligations of the Sublessee under this Sublease shall be guaranteed by _____ ("**Guarantor**").

1.11    **Attachments**. Attached hereto are the following, all of which constitute a part of this Sublease:

☑ an Addendum consisting of Paragraphs ___14___ through ___30___ ;

☑ a plot plan depicting the Premises and/or Project;

_____    _____
INITIALS    INITIALS

© 2019 AIR CRE.  All Rights Reserved.

Last Edited: 4/24/2020 10:41 AM

☐ a current set of the Rules and Regulations;

☑ ~~a Work Letter~~ Exhibit A and Exhibit B;

☑ a copy of the Master Lease and any and all amendments to such lease ~~(collectively the "**Master Lease**")~~;

☐ other (specify): _____ .

**2.   Premises.**

2.1   **Letting**.  Sublessor hereby subleases to Sublessee, and Sublessee hereby subleases from Sublessor, the Premises, for the term, at the rental, and upon all of the terms, covenants and conditions set forth in this Sublease.  While the approximate square footage of the Premises may have been used in the marketing of the Premises for purposes of comparison, the Base Rent stated herein is NOT tied to square footage and is not subject to adjustment should the actual size be determined to be different.  **Note: Sublessee is advised to verify the actual size prior to executing this Sublease.**

2.2   **Condition**.  Sublessor shall deliver the Premises to Sublessee, "as-is," broom clean and free of debris on the Commencement Date or the Early Possession Date, whichever first occurs ("**Start Date**"), and warrants that the existing electrical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning systems ("**HVAC**"), and any items which the Sublessor is obligated to construct pursuant to the Work Letter attached hereto, if any, other than those constructed by Sublessee, shall be in good operating condition on said date.  If a non-compliance with such warranty exists as of the Start Date, or if one of such systems or elements should malfunction or fail within the appropriate warranty period, Sublessor shall, as Sublessor's sole obligation with respect to such matter, except as otherwise provided in this Sublease, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such non-compliance, malfunction or failure, rectify same at Sublessor's expense.  The warranty periods shall be as follows: (i) ~~6 months~~ 60 days as to the HVAC systems, and (ii) 30 days as to the remaining systems and other elements.  If Sublessee does not give Sublessor the required notice within the appropriate warranty period, correction of any such non-compliance, malfunction or failure shall be the obligation of Sublessee at Sublessee's sole cost and expense.

2.3   **Compliance**.  Sublessor warrants that any improvements, alterations or utility installations made or installed by or on behalf of Sublessor to or on the Premises comply with all applicable covenants or restrictions of record and applicable building codes, regulations and ordinances ("**Applicable Requirements**") in effect on the date that they were made or installed.  Sublessor makes no warranty as to the use to which Sublessee will put the Premises or to modifications which may be required by the Americans with Disabilities Act or any similar laws as a result of Sublessee's use.  **NOTE: Sublessee is responsible for determining whether or not the zoning and other Applicable Requirements are appropriate for Sublessee's intended use, and acknowledges that past uses of the Premises may no longer be allowed.**  If the Premises do not comply with said warranty, Sublessor shall, except as otherwise provided, promptly after receipt of written notice from Sublessee setting forth with specificity the nature and extent of such non-compliance, rectify the same.

2.4   **Acknowledgements**.  Sublessee acknowledges that:  (a) it has been given an opportunity to inspect and measure the Premises, (b) it has been advised by Sublessor and/or Brokers to satisfy itself with respect to the condition of the Premises (including but not limited to the electrical, HVAC and fire sprinkler systems, security, environmental  aspects, and compliance with Applicable Requirements and the Americans with Disabilities Act), and their suitability for Sublessee's intended use, (c) Sublessee has made such investigation as it deems necessary with reference to such matters and assumes all responsibility therefor as the same relate to its occupancy of the Premises, (d) it is not relying on any representation as to the size of the Premises made by Brokers or Sublessor, (e) the square footage of the Premises was not material to Sublessee's decision to sublease the Premises and pay the Rent stated herein, and (f) neither Sublessor, Sublessor's agents, nor Brokers have made any oral or written representations or warranties with respect to said matters other than as set forth in this Sublease.  In addition, Sublessor acknowledges that: (i) Brokers have made no representations, promises or warranties concerning Sublessee's ability to honor the Sublease or suitability to occupy the Premises, and (ii) it is Sublessor's sole responsibility to investigate the financial capability and/or suitability of all proposed tenants.

2.5   **Americans with Disabilities Act**.  In the event that as a result of Sublessee's use, or intended use, of the Premises the Americans with Disabilities Act or any similar law requires modifications or the construction or installation of improvements in or to the Premises, Building, Project and/or Common Areas, the Parties agree that such modifications, construction or improvements shall be made at: ☐ Sublessor's expense ☑ Sublessee's expense.

2.6   **Vehicle Parking**.  Sublessee shall be entitled to use the number of Unreserved Parking Spaces and Reserved Parking Spaces specified in Paragraph 1.2(b) on those portions of the Common Areas designated from time to time for parking.  Sublessee shall not use more parking spaces than said number.  Said parking spaces shall be used for parking by vehicles no larger than full-size passenger automobiles or pickup trucks, herein called "**Permitted Size Vehicles**."  Sublessor may regulate the loading and unloading of vehicles by adopting Rules and Regulations as provided in Paragraph 2.9.  No vehicles other than Permitted Size Vehicles may be parked in the Common Area without the prior written permission of Sublessor.

(a)   Sublessee shall not permit or allow any vehicles that belong to or are controlled by Sublessee or Sublessee's employees, suppliers, shippers, customers, contractors or invitees to be loaded, unloaded, or parked in areas other than those designated by Sublessor for such activities.

(b)   Sublessee shall not service or store any vehicles in the Common Areas.

(c)   If Sublessee permits or allows any of the prohibited activities described in this Paragraph 2.6, then Sublessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove or tow away the vehicle involved and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

2.7   **Common Areas - Definition**.  The term "**Common Areas**" is defined as all areas and facilities outside the Premises and within the exterior boundary line of the Project and interior utility raceways and installations within the Premises that are provided and designated by the Sublessor from time to time for the general nonexclusive use of Sublessor, Sublessee and other tenants of the Project and their respective employees, suppliers, shippers, customers, contractors and invitees, including parking areas, loading and unloading areas, trash areas, roofs, roadways, walkways, driveways and landscaped areas.

2.8   **Common Areas - Sublessee's Rights**.  Sublessor grants to Sublessee, for the benefit of Sublessee and its employees, suppliers, shippers, contractors, customers and invitees, during the term of this Sublease, the nonexclusive right to use, in common with others entitled to such use, the Common Areas as they exist from time to time, subject to any rights, powers, and privileges reserved by Sublessor under the terms hereof or under the terms of any rules and regulations or restrictions governing the use of the Project.  Under no circumstances shall the right herein granted to use the Common Areas be deemed to include the right to store any property, temporarily or permanently, in the Common Areas.  Any such storage shall be permitted only by the prior written consent of Sublessor or Sublessor's designated agent, which consent may be revoked at any time.  In the event that any unauthorized storage shall occur then Sublessor shall have the right, without notice, in addition to such other rights and remedies that it may have, to remove the property and charge the cost to Sublessee, which cost shall be immediately payable upon demand by Sublessor.

2.9   **Common Areas - Rules and Regulations**.  Sublessee and Sublessor each acknowledges and agrees that Master Lessor shall exclusively manage and control the Common Area pursuant to Section 11 of the Master Lease.  Accordingly, Sublessee shall comply with all rules and regulations as set forth by Master Lessor in its use of the Common Area, to the extent required

INITIALS                                          INITIALS

© 2019 AIR CRE.  All Rights Reserved.                                          Last Edited: 4/24/2020 10:41 AM

by Section 6(f) of the Master Lease.  ~~Sublessor or such other person(s) as Sublessor may appoint shall have the exclusive control and management of the Common Areas and shall have the right, from time to time, to establish, modify, amend and enforce reasonable rules and regulations ("Rules and Regulations") for the management, safety, care, and cleanliness of the grounds, the parking and unloading of vehicles and the preservation of good order, as well as for the convenience of other occupants or tenants of the Building and the Project and their invitees.  Sublessee agrees to abide by and conform to all such Rules and Regulations, and to cause its employees, suppliers, shippers, customers, contractors and invitees to so abide and conform.  Sublessor shall not be responsible to Sublessee for the noncompliance with said Rules and Regulations by other tenants of the Project.~~

~~2.10   **Common Areas - Changes.**  Sublessor shall have the right, in Sublessor's sole discretion, from time to time:~~

~~(a)   To make changes to the Common Areas, including, without limitation, changes in the location, size, shape and number of driveways, entrances, parking spaces, parking areas, loading and unloading areas, ingress, egress, direction of traffic, landscaped areas, walkways and utility raceways;~~

~~(b)   To close temporarily any of the Common Areas for maintenance purposes so long as reasonable access to the Premises remains available;~~

~~(c)   To add additional buildings and improvements to the Common Areas;~~

~~(d)   To use the Common Areas while engaged in making additional improvements, repairs or alterations to the Project, or any portion thereof; and~~

~~(e)   To do and perform such other acts and make such other changes in, to or with respect to the Common Areas and Project as Sublessor may, in the exercise of sound business judgment, deem to be appropriate.~~

**3.   Possession.**

3.1   **Early Possession.**  Any provision herein granting Sublessee Early Possession of the Premises is subject to and conditioned upon the Premises being available for such possession prior to the Commencement Date.  Any grant of Early Possession only conveys a non-exclusive right to occupy the Premises.  If Sublessee totally or partially occupies the Premises prior to the Commencement Date, the obligation to pay Base Rent shall be abated for the period of such Early Possession.  All other terms of this Sublease (including but not limited to the obligations to pay Sublessee's Share of Common Area Operating Expenses, Real Property Taxes and insurance premiums and to maintain the Premises) shall, however, be in effect during such period.  Any such Early Possession shall not affect the Expiration Date.

3.2   **Delay in Commencement.**  ~~Sublessor agrees to use its best commercially reasonable efforts to deliver possession of the Premises by the Commencement Date.  If, despite said efforts, Sublessor is unable to deliver possession as agreed, the rights and obligations of Sublessor and Sublessee shall be as set forth in Paragraph 3.3 of the Master Lease (as modified by Paragraph 6.3 of this Sublease).~~Sublessor shall use commercially reasonable efforts to deliver possession of the Premises to Sublessee upon the Commencement Date. If Sublessor delivers possession of the Premises after the Commencement Date, Sublessee's obligation to pay Base Rent shall be apportioned and adjusted for such fraction of the calendar month that Sublessee receives possession of the Premises.

3.3   **Sublessee Compliance.**  Sublessor shall not be required to tender possession of the Premises to Sublessee until Sublessee complies with its obligation to provide evidence of insurance.  Pending delivery of such evidence, Sublessee shall be required to perform all of its obligations under this Sublease from and after the Start Date, including the payment of Rent, notwithstanding Sublessor's election to withhold possession pending receipt of such evidence of insurance.  Further, if Sublessee is required to perform any other conditions prior to or concurrent with the Start Date, the Start Date shall occur but Sublessor may elect to withhold possession until such conditions are satisfied.

**4.   Rent and Other Charges.**

4.1   **Rent Defined.**  All monetary obligations of Sublessee to Sublessor under the terms of this Sublease (except for the Security Deposit) are deemed to be rent ("**Rent**").  Rent shall be payable in lawful money of the United States to Sublessor at the address stated herein or to such other persons or at such other places as Sublessor may designate in writing.

4.2   **Common Area Operating Expenses.**  ~~Sublessee shall pay to Sublessor during the term hereof, in addition to the Base Rent, Sublessee's Share of all Common Area Operating Expenses, as hereinafter defined, during each calendar year of the term of this Sublease, in accordance with the following provisions:~~

~~(a)   "**Common Area Operating Expenses**" are defined, for purposes of this Sublease, as those costs incurred by Sublessor relating to the operation of the Project, which are included in the following list:~~

~~(i)   Costs related to the operation, repair and maintenance, in neat, clean, good order and condition, but not the replacement of the following:~~

~~(aa)   The Common Areas and Common Area improvements, including parking areas, loading and unloading areas, trash areas, roadways, parkways, walkways, driveways, landscaped areas, bumpers, irrigation systems, Common Area lighting facilities, fences and gates, elevators, roofs, and roof drainage systems.~~

~~(bb)   Exterior signs and any tenant directories.~~

~~(cc)   Any fire sprinkler systems.~~

~~(ii)   The cost of water, gas, electricity and telephone to service the Common Areas and any utilities not separately metered.~~

~~(iii)   The cost of trash disposal, pest control services, property management, security services, and the costs of any environmental inspections.~~

~~(iv)   Reserves set aside for maintenance and repair of Common Areas.~~

~~(v)   Real Property Taxes.~~

~~(vi)   Insurance premiums.~~

~~(vii)   Any deductible portion of an insured loss concerning the Building or the Common Areas.~~

~~(b)   The inclusion of the improvements, facilities and services set forth in Subparagraph 4.2(a) shall not be deemed to impose an obligation upon Sublessor to either have said improvements or facilities or to provide those services unless Sublessor already provides the services, or Sublessor has agreed elsewhere in this Sublease to provide the same or some of them.~~

~~(c)   Sublessee's Share of Common Area Operating Expenses is payable monthly on the same day as the Base Rent is due hereunder.  The amount of such payments shall be based on Sublessor's estimate of the Common Area Operating Expenses.  Within 60 days after written request (but not more than once each year) Sublessor shall deliver to Sublessee a reasonably detailed statement showing Sublessee's Share of the actual Common Area Operating Expenses incurred during the preceding year.  If Sublessee's payments under this Paragraph 4.2(c) during the preceding year exceed Sublessee's Share as indicated on such statement, Sublessor shall credit the amount of such overpayment against Sublessee's Share of Common Area Operating Expenses next becoming due.  If Sublessee's payments under this Paragraph 4.2(c) during the preceding year were less than Sublessee's Share as indicated on such statement, Sublessee shall pay to Sublessor the amount of the deficiency within 10 days after delivery by Sublessor to Sublessee of the statement.~~

4.3   **Utilities.**  Sublessee shall pay for all water, gas, heat, light, power, telephone, trash disposal and other utilities and services supplied to the Premises, together with any taxes thereon, in connection with Sublessee's use of the Premises, except to the extent that Master Lessor is responsible for the costs of any such utilities and services under the Master Lease.  ~~Notwithstanding the provisions of Paragraph 4.2, if at any time in Sublessor's sole judgment, Sublessor determines that Sublessee is using a disproportionate amount of water, electricity or other commonly metered~~

INITIALS  **YE**

INITIALS  **KR**

© 2019 AIR CRE.  All Rights Reserved.

SBMT-8.03, Revised 06-10-2019

Last Edited: 4/24/2020 10:41 AM

~~utilities, or that Sublessee is generating such a large volume of trash as to require an increase in the size of the dumpster and/or an increase in the number of times per month that the dumpster is emptied, then Sublessor may increase Sublessee's Base Rent by an amount equal to such increased costs.~~

**5.   Security Deposit.**   ~~The rights and obligations of Sublessor and Sublessee as to said Security Deposit shall be as set forth in Paragraph 5 of the Master Lease (as modified by Paragraph 7.3 of this Sublease).~~ Sublessee shall deposit with Sublessor the Security Deposit specified above.  The Security Deposit shall be paid by check upon full execution and delivery of this Sublease and the Master Lessor Consent.  Said sum shall be held by Sublessor as security for the performance by Sublessee of all the terms, covenants and conditions of this Sublease to be kept and performed by Sublessee and not as an advance rental deposit or as a measure of Sublessor's damage in case of Sublessee's Default. If Sublessee Defaults with respect to any provision of this Sublease, Sublessor may use any part of the Security Deposit for the payment of any rent or any other sum in Default, or for the payment of any amount which Sublessor may spend or become obligated to spend by reason of Sublessee's Default, or to compensate Sublessor for any other loss or damage which Sublessor may suffer by reason of Sublessee's Default. If any portion is so used, Sublessee shall within five (5) business days after written demand therefor, deposit with Sublessor an amount sufficient to restore the Security Deposit to its original amount and Sublessee's failure to do so shall be a material breach of this Sublease. Except to such extent, if any, as shall be required by law, Sublessor shall not be required to keep the Security Deposit separate from its general funds, and Sublessee shall not be entitled to interest on such deposit.  Within ninety (90) days after the expiration or termination of this Sublease, Sublessor shall return that portion of the Security Deposit not used or applied by Sublessor.  Sublessor shall upon written request provide Sublessee with an accounting showing how that portion of the Security Deposit that was not returned was applied.

**6.   Master Lease.**

6.1   Sublessor is the lessee of the Premises by virtue of the "**Master Lease**", wherein   John Hancock Life Insurance Company (U.S.A.), a Michigan corporation   is the lessor, hereinafter the "**Master Lessor**".   "**Master Lease**" means that certain Lease Agreement dated 11/17/2016, as assigned by that certain Assignment and Assumption of Lease dated 3/31/2018.

6.2   This Sublease is and shall be at all times subject and subordinate to the Master Lease.

6.3   The terms, conditions and respective obligations of Sublessor and Sublessee to each other under this Sublease shall be the terms and conditions of the Master Lease except for those provisions of the Master Lease which are directly contradicted by this Sublease in which event the terms of this Sublease document shall control over the Master Lease.  Therefore, for the purposes of this Sublease, wherever in the Master Lease the word "Lessor" is used it shall be deemed to mean the Sublessor herein and wherever in the Master Lease the word "Lessee" is used it shall be deemed to mean the Sublessee herein.

6.4   During the term of this Sublease and for all periods subsequent for obligations which have arisen prior to the termination of this Sublease, Sublessee does hereby expressly assume and agree to perform and comply with, for the benefit of Sublessor and Master Lessor, each and every obligation of Sublessor under the Master Lease, to the extent not contradicted by the terms of this Sublease, except for the following paragraphs which are excluded therefrom:   provisions requiring the payment of Basic Rent; Sections 12, 25, 30 & 31; Schedules H, J, K, L & M .

6.5   The obligations that Sublessee has assumed under paragraph 6.4 hereof are hereinafter referred to as the "**Sublessee's Assumed Obligations**".  The obligations that sublessee has not assumed under paragraph 6.4 hereof are hereinafter referred to as the "**Sublessor's Remaining Obligations**".

6.6   Sublessee shall hold Sublessor free and harmless from all liability, judgments, costs, damages, claims or demands, including reasonable attorneys fees, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.

6.7   Sublessor agrees to maintain the Master Lease during the entire term of this Sublease, subject, however, to any earlier termination of the Master Lease without the fault of the Sublessor, and to comply with or perform Sublessor's Remaining Obligations and to hold Sublessee free and harmless from all liability, judgments, costs, damages, claims or demands arising out of Sublessor's failure to comply with or perform Sublessor's Remaining Obligations.

6.8   Sublessor represents to Sublessee that the Master Lease is in full force and effect and that no default exists on the part of any Party to the Master Lease.

**7.   Assignment of Sublease and Default.**

7.1   Sublessor hereby assigns and transfers to Master Lessor the Sublessor's interest in this Sublease, subject however to the provisions of Paragraph 8.2 hereof.

7.2   Master Lessor, by executing this document, agrees that until a Default shall occur in the performance of Sublessor's Obligations under the Master Lease, that Sublessor may receive, collect and enjoy the Rent accruing under this Sublease.  However, if Sublessor shall Default in the performance of its obligations to Master Lessor then Master Lessor may, at its option, receive and collect, directly from Sublessee, all Rent owing and to be owed under this Sublease.  Master Lessor shall not, by reason of this assignment of the Sublease nor by reason of the collection of the Rent from the Sublessee, be deemed liable to Sublessee for any failure of the Sublessor to perform and comply with Sublessor's Remaining Obligations.

7.3   Sublessor hereby irrevocably authorizes and directs Sublessee upon receipt of any written notice from the Master Lessor stating that a Default exists in the performance of Sublessor's obligations under the Master Lease, to pay to Master Lessor the Rent due and to become due under the Sublease.  Sublessor agrees that Sublessee shall have the right to rely upon any such statement and request from Master Lessor, and that Sublessee shall pay such Rent to Master Lessor without any obligation or right to inquire as to whether such Default exists and notwithstanding any notice from or claim from Sublessor to the contrary and Sublessor shall have no right or claim against Sublessee for any such Rent so paid by Sublessee.

7.4   No changes or modifications shall be made to this Sublease without the consent of Master Lessor.

**8.   Consent of Master Lessor.**

8.1   ~~In the event that the Master Lease requires that Sublessor obtain the consent of Master Lessor to any subletting by Sublessor then, this Sublease shall not be effective unless, within 10 days of the date hereof, Master Lessor signs this Sublease thereby giving its consent to this Subletting.~~   This Sublease is conditioned upon Master Lessor's written consent to this Sublease in a form agreed to by Master Lessor, Sublessor and Sublessee (the "**Master Lessor Consent**"). The Master Lessor Consent shall include (i) a waiver of Master Lessor's right to recapture the Premises and (ii) Master Lessor's consent to Sublessee's initial improvements described in <u>Exhibit A</u> attached to this Sublease and to the transfer of standard directory and suite signage rights to Sublessee. Sublessor shall

_____
INITIALS

_____
INITIALS

© 2019 AIR CRE.  All Rights Reserved.                                                                                                 Last Edited: 4/24/2020 10:41 AM
SBMT-8.03, Revised 06-10-2019                                                                                                                                 Page 4 of 7

use its best efforts to obtain the Master Lease Consent. If the Master Lessor Consent has not been obtained within the time consistent with the Master Lease, then Sublessee may terminate this Sublease upon written notice to Sublessor at any time prior to receipt of such Master Lessor Consent, and upon such termination neither party shall have any continuing obligation to the other with respect to the Premises; provided, however, that Sublessor shall return the first month's rent and Security Deposit, if previously received from Sublessee. Sublessor, at its sole cost, shall be responsible for all fees and costs related to obtaining the Master Lessor Consent and for any Excess Transfer Rent payable to Master Lessor.

8.2   ~~In the event that the obligations of the Sublessor under the Master Lease have been guaranteed by third parties, then neither this Sublease, nor the Master Lessor's consent, shall be effective unless, within 10 days of the date hereof, said guarantors sign this Sublease thereby giving their consent to this Sublease.~~

8.3   In the event that Master Lessor does give such consent then:

(a)   Such consent shall not release Sublessor of its obligations or alter the primary liability of Sublessor to pay the Rent and perform and comply with all of the obligations of Sublessor to be performed under the Master Lease.

(b)   The acceptance of Rent by Master Lessor from Sublessee or any one else liable under the Master Lease shall not be deemed a waiver by Master Lessor of any provisions of the Master Lease.

(c)   The consent to this Sublease shall not constitute a consent to any subsequent subletting or assignment.

(d)   In the event of any Default of Sublessor under the Master Lease, Master Lessor may proceed directly against Sublessor, any guarantors or any one else liable under the Master Lease or this Sublease without first exhausting Master Lessor's remedies against any other person or entity liable thereon to Master Lessor.

(e)   Master Lessor must notify Sublessor of any ~~may consent to~~ subsequent ~~sublettings and~~ assignments of the Master Lease or this Sublease or any amendments or modifications thereto. ~~without notifying Sublessor or any one else liable under the Master Lease and without obtaining their consent and such action shall not relieve such persons from liability.~~

(f)   In the event that Sublessor shall Default in its obligations under the Master Lease, then Master Lessor, at its option and without being obligated to do so, may require Sublessee to attorn to Master Lessor in which event Master Lessor shall undertake the obligations of Sublessor under this Sublease from the time of the exercise of said option to termination of this Sublease but Master Lessor shall not be liable for any prepaid Rent nor any Security Deposit paid by Sublessee, nor shall Master Lessor be liable for any other Defaults of the Sublessor under the Sublease.

8.4   The signatures of the Master Lessor ~~and any Guarantors of Sublessor~~ at the end of this document shall constitute their consent to the terms of this Sublease.

8.5   Master Lessor acknowledges that, to the best of Master Lessor's knowledge, no Default presently exists under the Master Lease of obligations to be performed by Sublessor and that the Master Lease is in full force and effect.

8.6   In the event that Sublessor Defaults under its obligations to be performed under the Master Lease by Sublessor, Master Lessor agrees to deliver to Sublessee a copy of any such notice of default. Sublessee shall have the right to cure any Default of Sublessor described in any notice of default if Sublessee does so within the same number of days set forth in the notice of default given to Sublessor. If such Default is cured by Sublessee then Sublessee shall have the right of reimbursement and offset from and against Sublessor.

**9.   Additional Brokers Commissions.**

9.1   Futurewei does not want to renew the Sublease past the term listed in the Sublease herein. ~~Sublessor agrees that if Sublessee exercises any option or right of first refusal as granted by Sublessor herein, or any option or right substantially similar thereto, either to extend the term of this Sublease, to renew this Sublease, to purchase the Premises, or to lease or purchase adjacent property which Sublessor may own or in which Sublessor has an interest, then Sublessor shall pay to Broker a fee in accordance with the schedule of Broker in effect at the time of the execution of this Sublease. Notwithstanding the foregoing, Sublessor's obligation under this Paragraph is limited to a transaction in which Sublessor is acting as a Sublessor, lessor or seller.~~

~~9.2   If a separate brokerage fee agreement is attached then Master Lessor agrees that if Sublessee shall exercise any option or right of first refusal granted to Sublessee by Master Lessor in connection with this Sublease, or any option or right substantially similar thereto, either to extend or renew the Master Lease, to purchase the Premises or any part thereof, or to lease or purchase adjacent property which Master Lessor may own or in which Master Lessor has an interest, or if Broker is the procuring cause of any other lease or sale entered into between Sublessee and Master Lessor pertaining to the Premises, any part thereof, or any adjacent property which Master Lessor owns or in which Master Lessor has an interest, then as to any of said transactions, Master Lessor shall pay to Broker a fee, in cash, in accordance with the schedule attached to such brokerage fee agreement.~~

~~9.3   Any fee due from Sublessor or Master Lessor hereunder shall be due and payable upon the exercise of any option to extend or renew, upon the execution of any new lease, or, in the event of a purchase, at the close of escrow.~~

~~9.4   Any transferee of Sublessor's interest in this Sublease, or of Master Lessor's interest in the Master Lease, by accepting an assignment thereof, shall be deemed to have assumed the respective obligations of Sublessor or Master Lessor under this Paragraph 9. Broker shall be deemed to be a third-party beneficiary of this paragraph 9.~~

**10.   Representations and Indemnities of Broker Relationships.**  The Parties each represent and warrant to the other that it has had no dealings with any person, firm, broker, agent or finder (other than the Brokers and Agents, if any) in connection with this Sublease, and that no one other than said named Brokers and Agents is entitled to any commission or finder's fee in connection herewith. Sublessee and Sublessor do each hereby agree to indemnify, protect, defend and hold the other harmless from and against liability for compensation or charges which may be claimed by any such unnamed broker, finder or other similar party by reason of any dealings or actions of the indemnifying Party, including any costs, expenses, attorneys' fees reasonably incurred with respect thereto.

**11.   Attorney's fees.**  If any Party or Broker brings an action or proceeding involving the Premises whether founded in tort, contract or equity, or to declare rights hereunder, the Prevailing Party (as hereafter defined) in any such proceeding, action, or appeal thereon, shall be entitled to reasonable attorneys' fees. Such fees may be awarded in the same suit or recovered in a separate suit, whether or not such action or proceeding is pursued to decision or judgment. The term, "**Prevailing Party**" shall include, without limitation, a Party or Broker who substantially obtains or defeats the relief sought, as the case may be, whether by compromise, settlement, judgment, or the abandonment by the other Party or Broker of its claim or defense. The attorneys' fees award shall not be computed in accordance with any court fee schedule, but shall be such as to fully reimburse all attorneys' fees reasonably incurred. In addition, Sublessor shall be entitled to attorneys' fees, costs and expenses incurred in the preparation and service of notices of Default and consultations in connection therewith, whether or not a legal action is subsequently commenced in connection with such Default or resulting Breach ($200 is a reasonable minimum per occurrence for such services and consultation).

**12.   No Prior or Other Agreements; Broker Disclaimer.**  This Sublease contains all agreements between the Parties with respect to any matter mentioned herein, and

INITIALS                                                                                      INITIALS

no other prior or contemporaneous agreement or understanding shall be effective. Sublessor and Sublessee each represents and warrants to the Brokers that it has made, and is relying solely upon, its own investigation as to the nature, quality, character and financial responsibility of the other Party to this Sublease and as to the use, nature, quality and character of the Premises. Brokers have no responsibility with respect thereto or with respect to any default or breach hereof by either Party. The liability (including court costs and attorneys' fees), of any Broker with respect to negotiation, execution, delivery or performance by either Sublessor or Sublessee under this Sublease or any amendment or modification hereto shall be limited to an amount up to the fee received by such Broker pursuant to this Sublease; provided, however, that the foregoing limitation on each Broker's liability shall not be applicable to any gross negligence or willful misconduct of such Broker. Signatures to this Sublease accomplished by means of electronic signature or similar technology shall be legal and binding.

**13.   Accessibility; Americans with Disabilities Act.**

    (a)   The Premises:

☑ have not undergone an inspection by a Certified Access Specialist (CASp).  Note: A Certified Access Specialist (CASp) can inspect the subject premises and determine whether the subject premises comply with all of the applicable construction-related accessibility standards under state law. Although state law does not require a CASp inspection of the subject premises, the commercial property owner or lessor may not prohibit the lessee or tenant from obtaining a CASp inspection of the subject premises for the occupancy or potential occupancy of the lessee or tenant, if requested by the lessee or tenant. The parties shall mutually agree on the arrangements for the time and manner of the CASp inspection, the payment of the fee for the CASp inspection, and the cost of making any repairs necessary to correct violations of construction-related accessibility standards within the premises.

☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises met all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq.  Lessee acknowledges that it received a copy of the inspection report at least 48 hours prior to executing this Lease and agrees to keep such report confidential.

☐ have undergone an inspection by a Certified Access Specialist (CASp) and it was determined that the Premises did not meet all applicable construction-related accessibility standards pursuant to California Civil Code §55.51 et seq.  Lessee acknowledges that it received a copy of the inspection report at least 48 hours prior to executing this Lease and agrees to keep such report confidential except as necessary to complete repairs and corrections of violations of construction related accessibility standards.

In the event that the Premises have been issued an inspection report by a CASp the Lessor shall provide a copy of the disability access inspection certificate to Lessee within 7 days of the execution of this Lease.

    (b)   Since compliance with the Americans with Disabilities Act (ADA) or other state and local accessibility statutes are dependent upon SubLessee's specific use of the Premises, SubLessor makes no warranty or representation as to whether or not the Premises comply with ADA or any similar legislation.  In the event that SubLessee's use of the Premises requires modifications or additions to the Premises in order to be in compliance with ADA or other accessibility statutes, SubLessee agrees to make any such necessary modifications and/or additions at SubLessee's expense.

<u>ATTENTION:</u> NO REPRESENTATION OR RECOMMENDATION IS MADE BY AIR CRE OR BY ANY REAL ESTATE BROKER AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS SUBLEASE OR THE TRANSACTION TO WHICH IT RELATES.  THE PARTIES ARE URGED TO:
1.  SEEK ADVICE OF COUNSEL AS TO THE LEGAL AND TAX CONSEQUENCES OF THIS SUBLEASE.
2.  RETAIN APPROPRIATE CONSULTANTS TO REVIEW AND INVESTIGATE THE CONDITION OF THE PREMISES.  SAID INVESTIGATION SHOULD INCLUDE BUT NOT BE LIMITED TO:  THE POSSIBLE PRESENCE OF HAZARDOUS SUBSTANCES, THE ZONING OF THE PROPERTY, THE STRUCTURAL INTEGRITY, THE CONDITION OF THE ROOF AND OPERATING SYSTEMS, AND THE SUITABILITY OF THE PREMISES FOR SUBLESSEE'S INTENDED USE.

<u>WARNING:</u>  IF THE SUBJECT PROPERTY IS LOCATED IN A STATE OTHER THAN CALIFORNIA, CERTAIN PROVISIONS OF THE SUBLEASE MAY NEED TO BE REVISED TO COMPLY WITH THE LAWS OF THE STATE IN WHICH THE PROPERTY IS LOCATED.

Executed At:  _____            Executed At:  _____
On:  _____                  On:  _____

**By Sublessor:**                        **By Sublessee:**
<u>Futurewei Technologies, Inc., a Texas</u>     <u>Zovio, Inc., a Delaware corporation</u>
<u>corporation</u>

By: _____        By: _____
Name Printed: <u>Yingming Zhu</u>              Name Printed: _____
Title: <u>President</u>                         Title: _____
Phone: _____                   Phone: _____
Fax: _____                        Fax: _____
Email: _____                   Email: _____

By: _____        By: _____
Name Printed: _____             Name Printed: _____
Title: _____                       Title: _____
Phone: _____                   Phone: _____
Fax: _____                        Fax: _____
Email: _____                   Email: _____

                                          Address: _____
Address: _____            Federal ID No.: _____
Federal ID No.: _____

INITIALS                            INITIALS

© 2019 AIR CRE.  All Rights Reserved.          Last Edited: 4/24/2020 10:41 AM
SBMT-8.03, Revised 06-10-2019             

**BROKER**

 Cushman & Wakefield

Attn:  Bob Cowan/Mike Novkov

Title:

Address:  1000 Aviara Parkway, Suite 100
Carlsbad, CA 92011
Phone:  760-431-3836

Fax:

Email:  bob.cowan@cushwake.com /
mike.novkov@cushwake.com

Federal ID No.:

Broker DRE License #:  01329963

Agent DRE License #:  01838109/01890388

**BROKER**

 CBRE

Attn:  Tom Martinez / Tom Turner

Title:

Address:  4301 La Jolla Village Dr., Ste. 3000
San Diego, CA 92122
Phone:  858-546-5412

Fax:

Email:

Federal ID No.:

Broker DRE License #:

Agent DRE License #:  00933044 / 02079307

Consent to the above Sublease is hereby given.

Executed At:

Executed On:

**By Master Lessor:**
 John Hancock Life Insurance Company
(U.S.A.), a Michigan corporation

By:
   SEE SUBLEASE CONSENT AGREEMENT
Name Printed:

Title:

Phone:

Fax:

Email:

By:

Name Printed:

Title:

Phone:

Fax:

Email:

Address:

Federal ID No.:

Executed At:

Executed On:

**By Guarantor:**
 N/A

By:

Name Printed:  N/A

Title:

Address:

By:

Name Printed:

Title:

Address:

AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com
NOTICE:  No part of these works may be reproduced in any form without permission in writing.





INITIALS



INITIALS

© 2019 AIR CRE.  All Rights Reserved.



## ADDENDUM TO SUBLEASE

**Date:** ___April 15, 2020___
**By and Between**
  **Sublessor:** ___Futurewei Technologies, Inc., a Texas corporation___
  **Sublessee:** ___Zovio, Inc., a Delaware corporation___
**Property Address:** ___10180 Telesis Court, Suite 400, San Diego, CA 92121___
                    (street address, city, state, zip)

Paragraph: ___14 – 30___

In the event of any conflict between the provisions of this Addendum and the printed provisions of the Sublease, this Addendum shall control.

14.  Base Rent:
Base Rent for the term is as scheduled below:

| Period Start Date | Period End Date | RSF | Annual Base Rate Per SF of Rentable Area of Premises | #of Months | Monthly Rent |
|---|---|---|---|---|---|
| 5/1/2020 | 4/30/2021 | 19,143 | $30.00 | 12 | $47,858.00 |
| 5/1/2021 | 4/30/2022 | 19,143 | $30.90 | 12 | $49,293.00 |
| 5/1/2022 | 4/30/2023 | 19,143 | $31.83 | 12 | $50,777.00 |
| 5/1/2023 | 4/30/2024 | 19,143 | $32.79 | 12 | $52,295.00 |
| 5/1/2024 | 2/28/2025 | 19,143 | $33.77 | 10 | $53,864.00 |

15.  Operating Expenses:
Beginning January 1, 2021 and continuing for the remainder of the Sublease term, Sublessee shall pay to Sublessor, as Additional Rent, the amount by which (a) Sublessee's Share of the Operating Costs payable by Sublessor pursuant to Section 3(c) of the Master Lease for the applicable calendar year exceed (b) Sublessee's Share of the Operating Costs payable by Sublessor pursuant to Section 3(c) of the Master Lease for the calendar year 2020 (Sublessee's base year). Such amount shall be appropriately prorated for any partial calendar years occurring during the Sublease term. As used herein "Sublessee's Share" means (i) a fraction the numerator of which is the approximate rentable square footage of the Premises and the denominator of which is the approximate rentable square footage of Sublessor's premises under the Master Lease (i.e., 19,143/29,767 or 64.3%), or (ii) as to any statements received from Master Lessor that break the Additional Rent down by suite, 100% of the amount for Suite 400. The current projected Operating Expenses for 2020 are estimated to be $0.13 per rentable square foot, per month.

16.  Late Fees:
Amounts due by Sublessee to Sublessor pursuant to the terms of this Sublease (including Base Rent), which are not paid within ten (10) days subsequent to the due date shall be subject to interest and late charge as set forth in Section 10 (Events of Default and Remedies) of the Master Lease.

17.  Furniture:
For and in consideration of the sum of $1.00 and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, effective upon the delivery of the Premises to Sublessee (the "Delivery Date") Sublessor does hereby grant, sell, convey, transfer and deliver to Sublessee all of Sublessor's right, title and interest in and to furniture located in the Premises as of the Delivery Date (the "FF&E"). Sublessor represents and warrants that it has good and marketable title to the FF&E, and that the FF&E is free and clear of any third party claims or encumbrances. Sublessor and Sublessee shall sign within thirty (30) days of Sublease Execution Date the Asset Sale and Transfer Agreement set forth in Exhibit B to this Sublease to effectuate the terms of this paragraph. Sublessee shall be responsible for the removal of all FF&E at the end of the Sublease term.  The terms of this paragraph shall survive the expiration or termination of this

INITIALS                           INITIALS

© 2019 AIR CRE.  All Rights Reserved.

Sublease.

**18. Restoration:**
Sublessee shall perform all removal and restoration requirements of the Master Lease to the extent relating to (a) the FF&E, (b) improvements installed by Sublessee, and (c) Sublessee shall remove any wiring and cabling installed throughout the Premises.   All other removal and restoration requirements shall remain the responsibility of Sublessor, except as otherwise expressly provided in this Sublease.

**19. Indemnification:**
Sublessee shall indemnify, defend and hold Sublessor harmless from and against all liability, judgments, costs, damages, claims or demands, including reasonable attorneys' fees and costs, arising out of Sublessee's failure to comply with or perform Sublessee's Assumed Obligations.  This indemnification obligation shall survive the expiration or earlier termination of this Sublease.

**20. Limitation of Liability:**
In no event shall Sublessor or its stockholders, principals, officers, directors, employees, lenders, or agents be liable to Sublessee for any lost profit, damage to or loss of business or any form of special, indirect or consequential damage.

**21. Alterations and Improvements:**
No alterations or improvements shall be made to the Premises, except in accordance with the Master Lease, and with the prior written consent of both the Master Lessor and Sublessor (to the extent the Master Lease requires Master Lessor's consent).  Sublessee, at Sublessee's sole cost, may, upon Sublessor and Master Lessor approval, make future modifications to the Premises, e.g., build a reception area or take down a wall to create a larger conference room in the Premises. Sublessor may require Sublessee to remove, at the end of the Sublease term, any alterations or improvements it installs by delivering to Sublessee notice of such requirements at any time prior to the expiration or earlier termination of this Sublease, to the extent such removal is required pursuant to the Master Lease.  Sublessor hereby approves Sublessee's initial improvements identified on Exhibit A attached hereto.

**22. Environmental Compliance:**
Sublessee shall comply with the Environmental Compliance section in the Master Lease.

**23. Holding Over:**
If Sublessee (directly or through any transferee or other successor-in-interest of Sublessee) remains in possession of all or any part of the Premises after the expiration of the Sublease Term or earlier termination of this Sublease, such holding over, in the absence of an express written agreement to the contrary, shall be on the basis of a tenancy at the sufferance of Sublessor.  In such event, Sublessee shall continue to comply with all of the terms, conditions and covenants of this Sublease as though the Sublease Term had continued, except that such tenancy at sufferance shall be terminable by Sublessor at any time and rent shall be paid for each month (or portion thereof) during which Sublessee holds over in the Premises after the expiration or earlier termination of this Sublease, in an amount equal to 150% of the monthly Base Rent that was last applicable during the Sublease term.  If Sublessee fails to surrender the Premises on the expiration of this Sublease, in addition to any other liabilities to Sublessor accruing therefrom, Sublessee shall indemnify and hold Sublessor harmless from all loss or liability reasonably and directly resulting from such failure, including without limitation (i) any claims of Master Lessor against Sublessor for failure to surrender the Master Premises at the time and in the manner required under the Master Lease or for violating any term of the Master Lease in connection with Sublessee's failure to surrender the Premises, and (ii) any claims made by any succeeding subtenant, tenant or other party based upon such failure.  This indemnification obligation shall survive the expiration or earlier termination of this Sublease.  The provisions of this paragraph are in addition to and do not limit Sublessor's rights or Sublessee's obligations under this Sublease.

**24. Maintenance:**
Sublessor shall be solely responsible, at its expense, for all maintenance and repair obligations of Tenant under the Master Lease. Master Lessor shall be solely responsible for performance of any maintenance and repair obligations required to be performed by Master Lessor, under the Master Lease, and in the event Master Lessor breaches any of its obligations, Sublessor shall use commercially reasonable efforts to work with Master Lessor so that Master Lessor fulfills its obligations under the Master Lease.  Sublessee shall be solely responsible, at its expense, for the maintenance and repair of the FF&E, and any of Sublessee's equipment or improvements to the Premises.  Except to the extent caused by Sublessee's gross negligence or willful misconduct, Sublessee shall not be responsible for any casualty damage except to its

INITIALS                                                           INITIALS

own personal property.

**25.  Signage:**
Sublessee shall coordinate with Master Lessor for approval on the installation of any Sublessee signage on the Premises. Sublessee shall be responsible for all costs related to the installation, maintenance, and removal of such signs.

**26.  Remedies:**
If an Event of Default occurs by Sublessee, Sublessor shall have all remedies provided pursuant to the Master Lease and by applicable law.  As used in this Sublease, the terms "Default" and "Event of Default" mean a breach or default that continues beyond all applicable notice and cure periods

**27.  Tenant Insurance:**
Sublessee shall obtain and keep in full force and effect at all times during the Sublease term: (a) the liability and property insurance coverage required to be maintained by Tenant under Sections 9(b)(i) and 9(b)(ii) of the Master Lease, with regards to the Premises, provided that both Master Lessor and Sublessor shall be identified as additional insureds; and (b) any other insurance required by Master Lessor in accordance with Section 9(b)(iii) of the Master Lease, with regards to the Premises, provided that Sublessor provides reasonable prior written notice of such requirement to Sublessee, together with a copy of Master Lessor's notice to Sublessor stating such requirement. Such policies shall be written in accordance with the requirements for such insurance set forth in Section 9(b) of the Master Lease, except that clause (B) of such Section 9(b) is hereby deleted and instead Sublessee agrees to provide such notice to Sublessor.

Sublessee agrees that neither Sublessor nor Master Lessor shall be liable for bodily injury or death, or loss or damage to any property belonging to, Sublessee or its employees, agents, invitees or licensees or any other person in, on or about the Premises except to the extent resulting from actual willful misconduct or gross negligence of Sublessor or Master Lessor or their respective agents or employees and to the extent not insured or required to be insured by Sublessee under this Sublease. Section 9 Paragraphs (d) through (g) of the Master Lease, regarding Insurance and Liability, shall be applied to this Sublease, where the Sublessee shall be substituted for Tenant and Sublessor shall be substituted for Landlord.

**28.  Surrender and Restoration of Premises:**
Prior to the expiration or earlier termination of this Sublease, Sublessee shall remove all of its furniture, equipment and other personal property (including the FF&E) from the Premises and shall surrender the Premises to Sublessor in substantially the same condition that exists on the Sublease Commencement Date, free of hazardous materials caused by Sublessee, reasonable wear and tear, permitted alterations, improvements and damage due to casualty and condemnation excepted.

**29.  Assignee/Sublessee:**
Sublessee shall not further sublet all or any portion of the Premises to others or assign or encumber the Sublease except in accordance with Section 7 of the Master Lease.

**30.  Terrorism/Governmental Action:**
Sublessee warrants and represents to Sublessor that Sublessee is not, and shall not become, a person or entity with whom Sublessor is restricted from doing business under regulations of the Office of Foreign Asset Control ("OFAC") of the Department of the Treasury (including, but not limited to, those named on OFAC'S Specially Designated and Blocked Persons list) or under any statute, executive order (including, but not limited to, the September 24, 2001, Executive Order Blocking Property and Prohibiting Transactions With Persons Who Commit, Threaten to Commit, or Support Terrorism) or other governmental action, and is not and shall not engage in any dealings or transaction or be otherwise associated with such persons or entities.

**AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com**
**NOTICE:  No part of these works may be reproduced in any form without permission in writing.**



INITIALS



INITIALS

© 2019 AIR CRE.  All Rights Reserved.

DocuSign Envelope ID: F63359BB-65A0-4609-B41D-1C352B45D676



## EXHIBITS TO SUBLEASE

**Plot Plan Depicting the Premises**
(Existing As-Built)





INITIALS

INITIALS

© 2019 AIR CRE. All Rights Reserved.

EXSL-1.00, Revised 06-10-2019

Last Edited: 4/24/2020 10:41 AM

## EXHIBIT A



The improvements identified in this Exhibit A are also subject to the consent of the Master Landlord.  Sublessee shall not make the improvements until Sublessee also receives such consent from the Master Landlord.  If any change is required to the improvements identified in this Exhibit A in order to obtain Master Landlord's consent, the Parties shall amend this Sublease to update this Exhibit A to reflect such changes.



INITIALS



INITIALS

© 2019 AIR CRE.  All Rights Reserved.

EXSL-1.00, Revised 06-10-2019

DocuSign Envelope ID: F63359BB-85A9-4609-B41D-1C352B45D676

# EXHIBIT B
## ASSET SALE AND TRANSFER AGREEMENT

This Asset Sale and Transfer Agreement (this "Agreement") is entered into as of the later of the two signature dates below (the "Closing Date") between Futurewei Technologies, Inc., incorporated and existing under the laws of Texas, and having its principal place of business at 2330 Central Expressway, Santa Clara, CA 95050 (the "Seller"), and Zovio, Inc, a Delaware corporation (the "Buyer") with its principal place of business at 1811 E. Northrop Blvd., Chandler, AZ 85286.

Seller and Buyer may individually be referred to as a "Party" and collectively as "Parties."

### RECITALS

WHEREAS, Buyer desires to acquire certain assets owned by Seller, and Seller is willing to sell such assets to Buyer, according to the terms and conditions set forth in this Agreement.

NOW, THEREFORE, for the good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. <u>Definitions.</u>  As used herein, the following terms shall have the following meanings:

    a. Assets.  The term "**Assets**" refers to the furniture enumerated in <u>Exhibit A</u>;

    b. Agreement.  The term "**Agreement**" shall mean this Asset and Sale Transfer Agreement and the Exhibit attached hereto.

2. <u>Sale, Purchase and Transfer of Assets.</u>

    a. Subject to the terms and conditions of this Agreement, on the Closing Date, Seller agrees to sell, transfer and assign, and Buyer agrees to purchase and accept on the terms stated herein, all of Seller's right, title and interest in and to the Assets.

    b. At any time, and from time to time after the Closing Date, at the request of the Buyer and at Buyer's sole cost and expense, the Seller shall execute and deliver such other instruments of sale, transfer, conveyance, assignment and/or confirmation as may be reasonably requested in order to more effectively transfer, convey and assign to the Buyer and/or to confirm the Buyer's title to the Assets.

3. <u>Payment Terms.</u>

    a. Buyer shall purchase the Assets from Seller in the amount of $1.00 (the "**Purchase Price**"). Buyer shall pay the Purchase Price in its entirety upon the Closing Date. Buyer shall send payment of the Purchase Price to Seller's address set forth below:

        Futurewei Technologies, Inc
        Attn: Finance AP
        2330 Central Expressway
        Santa Clara, CA, 95050

    b. <u>Transfer Taxes.</u>  Any transfer taxes or sales taxes payable as a result of the sale of the Assets shall be paid by Buyer.

4. <u>Warranty.</u>

    a. Buyer represents that it has inspected the Assets and on the Closing Date accepts the Assets AS IS, WHERE IS, and WITH ALL FAULTS.

INITIALS

INITIALS

    b.   <u>Assets; Title to Assets.</u>

        i.   Seller represents and warrants that Seller has good and marketable title to all Assets free from any third-party rights and all Assets are in Seller's possession;

        ii.   All Assets consist of items which are good and merchantable within normal trade practice;

        iii.   All Assets were purchased by Seller in the ordinary course of business; and

        iv.   No option, right to acquire, pledge, lien or other form of security or encumbrance over or affecting the Assets is outstanding and, apart from those set out in this Agreement there is no agreement or commitment to give or create any of them, and no claim has been made by any person or entity to be entitled to any of them.

    c.   <u>No Other Representations or Warranties.</u>  Except for the representations and warranties expressly set forth in this Agreement, neither Seller nor or its officers, directors, employees, agents or representatives have made or make any other express or implied representation or warranty of any nature whatsoever, either written or oral, including but not limited to warranty of merchantability or fitness for a particular purpose, on behalf of Seller relating to Seller or the sale of Assets, including any representation or warranty as to the accuracy or completeness of any information provided or made available to the Buyer and its representatives which may be relied upon by Buyer in executing, delivering and performing this Agreement.

    d.   <u>Product Warranties.</u> Seller provides no express or implied warranty, indemnification, or guarantee to Buyer in excess of the warranty provided by the applicable product manufacturer for all Assets sold. Seller disclaims all liability (and there is no basis for any present or future proceeding) for replacement or repair thereof or other damages, liabilities, or obligations regarding the Assets.

5.   <u>Liabilities Assumed by Buyer</u>.  Buyer shall, as of the Closing Date and without any further responsibility or liability of or recourse to Seller, or its officers, directors, employees, agents or representatives, absolutely and irrevocably assume and shall be liable and responsible for the claims, liabilities, and obligations with respect to the Assets, to the extent first incurred or arising at or after the Closing Date. Buyer releases Seller from any liability with respect to the condition of the Assets at and after the Closing Date, regardless of whether any damage has been caused by or is attributable to Seller's negligence or fault in using the Assets prior to the Closing Date.

6.   <u>Transfer.</u>  All Assets under this Agreement are located at the address set forth below as of the Closing Date.

        Zovio, Inc.
        10180 Telesis Court
        Suite 400
        San Diego, CA 92121

7.   <u>Entire Agreement.</u>  This Agreement constitutes the entire agreement between the Parties with respect to the subject matter hereof and supersedes any prior understandings and agreements between the Parties with respect to the subject matter hereof.  There are no undertakings, representations, warranties, terms, conditions express, implied or statutory, between the Parties with respect to the subject matter hereof other than as expressly set forth in this Agreement.

8.   <u>Governing Law.</u>  This Agreement shall be governed by any construed in accordance with the laws of the State of California and the laws of the U.S. applicable therein.  The Parties agree to submit to the jurisdiction of the state and federal courts located in Santa Clara County, CA in relation to any dispute or other matter arising from this Agreement.  In the event of any dispute between the Parties arising from this Agreement, the prevailing party shall be entitled to recover from the other its costs and expenses, including without limitation reasonable attorneys' fees.



INITIALS



INITIALS

9.  <u>Miscellaneous.</u>

    a.  If any provision in this Agreement shall be adjudicated by any court to be invalid or unenforceable, such provision shall be reformed by such court so as to be enforceable to the fullest extent permitted by applicable law.  Any provision in this Agreement that cannot be so reformed and is thus adjudicated to be invalid or unenforceable shall be deemed deleted from this Agreement in order to render the remainder of this Agreement both valid and enforceable.  Any such reformation or deletion shall apply only where the court making such adjudication has jurisdiction.

    b.  Neither Party may assign or delegate any of his, her, or its, rights or obligations hereunder without first obtaining the written consent of the other Party.

    c.  Section headings in this Agreement are for convenience or reference only and shall neither constitute a part of this Agreement nor affect its interpretation.

    d.  This Agreement may be executed in any number of counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

*****SIGNATURE PAGE TO FOLLOW*****



INITIALS



INITIALS

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Closing Date.

FUTUREWEI TECHNOLOGIES, INC.
(SELLER)

By: _____
    DocuSigned by:
    *Yingming Zhu*
    2C239D43977647B...

Name: _____

Date: _____

ZOVIO, INC.
(BUYER)

By: _____
    DocuSigned by:
    *Kevin Royal*
    6C215FFA48AD41A...

Name: _____

Date: _____



INITIALS

INITIALS

© 2019 AIR CRE.  All Rights Reserved.

EXSL-1.00, Revised 06-10-2019

Last Edited: 4/24/2020 10:41 AM

## EXHIBIT A
ASSETS FOR SALE

| List of Assets for Sale (Per Invoice) | |
|---|---|
| **ASSET** | **QUANTITY** |
| Cubicles | 79 |
| Work Cafe – Campfire Big Table | 1 |
| Reception Furniture Set (2) | 1 – Rectangle Glass-Top Table |
| | 2 – Chair Work Lounge |
| Private Office Desks | 6 |
| Office Sets | 16 |
| Campfire Bing Lounge | 2 |
| Executive Office Desk | 1 |
| Executive Office Furniture Set | 1 |
| Collab Furniture – Bivi Seat Rumble (60W) | 3 |
| Collab Furniture – Bivi Seat Rumble (36W) | 2 |
| Collab Furniture Set | 1 – Square Table |
| | 1 – Lounge Chair |
| | 1 – Three-Seat Sofa |
| Board Room Conference Table | 1 |
| **Disclaimer**. Although the quantity of Assets described above are presented in good faith, and Seller has taken reasonable efforts to ensure the quantity of Assets described above is accurate, Seller makes no representation or warranties as to the accuracy of the information. Seller has no liability for any errors or omissions in the Assets. | |

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]



INITIALS



INITIALS

© 2019 AIR CRE.  All Rights Reserved.
EXSL-1.00, Revised 06-10-2019



### DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP
**(As required by the Civil Code)**

When you enter into a discussion with a real estate agent regarding a real estate transaction, you should from the outset understand what type of agency relationship or representation you wish to have with the agent in the transaction.

**SELLER'S AGENT**

A Seller's agent under a listing agreement with the Seller acts as the agent for the Seller only. A Seller's agent or a subagent of that agent has the following affirmative obligations:
To the Seller: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Seller.
To the Buyer and the Seller:
    (a)   Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)   A duty of honest and fair dealing and good faith.
(c)   A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
    An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**BUYER'S AGENT**

A Buyer's agent can, with a Buyer's consent, agree to act as agent for the Buyer only. In these situations, the agent is not the Seller's agent, even if by agreement the agent may receive compensation for services rendered, either in full or in part from the Seller. An agent acting only for a Buyer has the following affirmative obligations:
To the Buyer: A fiduciary duty of utmost care, integrity, honesty and loyalty in dealings with the Buyer.
To the Buyer and the Seller:
    (a)   Diligent exercise of reasonable skill and care in performance of the agent's duties.
    (b)   A duty of honest and fair dealing and good faith.
    (c)   A duty to disclose all facts known to the agent materially affecting the value or desirability of the property that are not known to, or within the diligent attention and observation of, the parties.
An agent is not obligated to reveal to either party any confidential information obtained from the other party that does not involve the affirmative duties set forth above.

**AGENT REPRESENTING BOTH SELLER AND BUYER**

A real estate agent, either acting directly or through one or more salesperson and broker associates, can legally be the agent of both the Seller and the Buyer in a transaction, but only with the knowledge and consent of both the Seller and the Buyer.
In a dual agency situation, the agent has the following affirmative obligations to both the Seller and the Buyer:
    (a)   A fiduciary duty of utmost care, integrity, honesty and loyalty in the dealings with either the Seller or the Buyer.
    (b)   Other duties to the Seller and the Buyer as stated above in their respective sections.
In representing both Seller and Buyer, a dual agent may not, without the express permission of the respective party, disclose to the other party confidential information, including, but not limited to, facts relating to either the Buyer's or Seller's financial position, motivations, bargaining position, or other personal information that may impact price, including the Seller's willingness to accept a price less than the listing price or the Buyer's willingness to pay a price greater than the price offered.

**SELLER AND BUYER RESPONSIBILITIES**

Either the purchase agreement or a separate document will contain a confirmation of which agent is representing you and whether that agent is representing you exclusively in the transaction or acting as a dual agent. Please pay attention to that confirmation to make sure it accurately reflects your understanding of your agent's role. The above duties of the agent in a real estate transaction do not relieve a Seller or Buyer from the responsibility to protect his or her own interests. You should carefully read all agreements to assure that they adequately express your understanding of the transaction. A real estate agent is a person qualified to advise about real estate. If legal or tax advice is desired, consult a competent professional. If you are a Buyer, you have the duty to exercise reasonable care to protect yourself, including as to those facts about the property which are known to you or within your diligent attention and observation. Both Sellers and Buyers should strongly consider obtaining tax advice from a competent professional because the federal and state tax consequences of a transaction can be complex and subject to change.

Throughout your real property transaction you may receive more than one disclosure form, depending upon the number of agents assisting in the transaction. The law requires each agent with whom you have more than a casual relationship to present you with this disclosure form. You should read its contents each time it is presented to you, considering the relationship between you and the real estate agent in your specific transaction. **This disclosure form includes the provisions of Sections 2079.13 to 2079.24, inclusive, of the Civil Code set forth on page 2. Read it carefully. I/WE ACKNOWLEDGE RECEIPT OF A COPY OF THIS DISCLOSURE AND THE PORTIONS OF THE CIVIL CODE PRINTED ON THE BACK (OR A SEPARATE PAGE).**

☐ Buyer   ☐ Seller   ☑ Lessor   ☐ Lessee     _Yingming Zhu_     Date: _____
                                         2C239D43977647B...

☐ Buyer   ☐ Seller   ☐ Lessor   ☑ Lessee     _Kevin Royal_     Date: _____
                                         6C215FFA48AD41A...

Agent:   __Cushman & Wakefield__   DRE Lic. #: __01329963__
        Real Estate Broker (Firm)

By: __Bob Cowan / Mike Novkov__   DRE Lic. #: __01838109 / 01890388__   Date: __4/15/20__
    (Salesperson or Broker-Associate)

THIS FORM HAS BEEN PREPARED BY AIR CRE. NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ADEQUACY OF THIS FORM FOR ANY SPECIFIC TRANSACTION. PLEASE SEEK LEGAL COUNSEL AS TO THE APPROPRIATENESS OF THIS FORM.

_____                                       _____
INITIALS                                   INITIALS

© 2019 AIR CRE. All Rights Reserved.                    Last Edited: 4/24/2020 10:41 AM

**DISCLOSURE REGARDING REAL ESTATE AGENCY RELATIONSHIP**
**CIVIL CODE SECTIONS 2079.13 THROUGH 2079.24 (2079.16 APPEARS ON THE FRONT)**

**2079.13.** As used in Sections 2079.7 and 2079.14 to 2079.24, inclusive, the following terms have the following meanings: **(a)** "Agent" means a person acting under provisions of Title 9 (commencing with Section 2295) in a real property transaction, and includes a person who is licensed as a real estate broker under Chapter 3 (commencing with Section 10130) of Part 1 of Division 4 of the Business and Professions Code, and under whose license a listing is executed or an offer to purchase is obtained. The agent in the real property transaction bears responsibility for that agent's salespersons or broker associates who perform as agents of the agent. When a salesperson or broker associate owes a duty to any principal, or to any buyer or seller who is not a principal, in a real property transaction, that duty is equivalent to the duty owed to that party by the broker for whom the salesperson or broker associate functions. **(b)** "Buyer" means a transferee in a real property transaction, and includes a person who executes an offer to purchase real property from a seller through an agent, or who seeks the services of an agent in more than a casual, transitory, or preliminary manner, with the object of entering into a real property transaction. "Buyer" includes vendee or lessee of real property. **(c)** "Commercial real property" means all real property in the state, except (1) single-family residential real property, (2) dwelling units made subject to Chapter 2 (commencing with Section 1940) of Title 5, (3) a mobilehome, as defined in Section 798.3, (4) vacant land, or (5) a recreational vehicle, as defined in Section 799.29. **(d)** "Dual agent" means an agent acting, either directly or through a salesperson or broker associate, as agent for both the seller and the buyer in a real property transaction. **(e)** "Listing agreement" means a written contract between a seller of real property and an agent, by which the agent has been authorized to sell the real property or to find or obtain a buyer, including rendering other services for which a real estate license is required to be given pursuant to the terms of the agreement. **(f)** "Seller's agent" means a person who has obtained a listing of real property to act as an agent for compensation. **(g)** "Listing price" is the amount expressed in dollars specified in the listing for which the seller is willing to sell the real property through the seller's agent. **(h)** "Offering price" is the amount expressed in dollars specified in an offer to purchase for which the buyer is willing to buy the real property. **(i)** "Offer to purchase" means a written contract executed by a buyer acting through a buyer's agent that becomes the contract for the sale of the real property upon acceptance by the seller. **(j)** "Real property" means any estate specified by subdivision (1) or (2) of Section 761 in property, and includes (1) single-family residential property, (2) multiunit residential property with more than four dwelling units, (3) commercial real property, (4) vacant land, (5) a ground lease coupled with improvements, or (6) a manufactured home as defined in Section 18007 of the Health and Safety Code, or a mobilehome as defined in Section 18008 of the Health and Safety Code, when offered for sale or sold through an agent pursuant to the authority contained in Section 10131.6 of the Business and Professions Code. **(k)** "Real property transaction" means a transaction for the sale of real property in which an agent is retained by a buyer, seller, or both a buyer and seller to act in that transaction, and includes a listing or an offer to purchase. **(l)** "Sell," "sale," or "sold" refers to a transaction for the transfer of real property from the seller to the buyer and includes exchanges of real property between the seller and buyer, transactions for the creation of a real property sales contract within the meaning of Section 2985, and transactions for the creation of a leasehold exceeding one year's duration. **(m)** "Seller" means the transferor in a real property transaction and includes an owner who lists real property with an agent, whether or not a transfer results, or who receives an offer to purchase real property of which he or she is the owner from an agent on behalf of another. "Seller" includes both a vendor and a lessor of real property. **(n)** "Buyer's agent" means an agent who represents a buyer in a real property transaction.

**2079.14.** A seller's agent and buyer's agent shall provide the seller and buyer in a real property transaction with a copy of the disclosure form specified in Section 2079.16, and shall obtain a signed acknowledgement of receipt from that seller and buyer, except as provided in Section 2079.15, as follows: **(a)** The seller's agent, if any, shall provide the disclosure form to the seller prior to entering into the listing agreement. **(b)** The buyer's agent shall provide the disclosure form to the buyer as soon as practicable prior to execution of the buyer's offer to purchase. If the offer to purchase is not prepared by the buyer's agent, the buyer's agent shall present the disclosure form to the buyer not later than the next business day after receiving the offer to purchase from the buyer.

**2079.15.** In any circumstance in which the seller or buyer refuses to sign an acknowledgement of receipt pursuant to Section 2079.14, the agent shall set forth, sign, and date a written declaration of the facts of the refusal.

**2079.16** Reproduced on Page 1 of this AD form.

**2079.17(a)** As soon as practicable, the buyer's agent shall disclose to the buyer and seller whether the agent is acting in the real property transaction as the buyer's agent, or as a dual agent representing both the buyer and the seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller, the buyer, and the buyer's agent prior to or coincident with execution of that contract by the buyer and the seller, respectively. **(b)** As soon as practicable, the seller's agent shall disclose to the seller whether the seller's agent is acting in the real property transaction as the seller's agent, or as a dual agent representing both the buyer and seller. This relationship shall be confirmed in the contract to purchase and sell real property or in a separate writing executed or acknowledged by the seller and the seller's agent prior to or coincident with the execution of that contract by the seller.

**(C)** CONFIRMATION: The following agency relationships are confirmed for this transaction.

Seller's Brokerage Firm ___DO NOT COMPLETE, SAMPLE ONLY___ License Number _____
Is the broker of (check one): ☐ the seller; or ☐ both the buyer and seller. (dual agent)
Seller's Agent ___DO NOT COMPLETE, SAMPLE ONLY___ License Number _____
Is (check one): ☐ the Seller's Agent. (salesperson or broker associate); or ☐ both the Buyer's Agent and the Seller's Agent. (dual agent)
Buyer's Brokerage Firm ___DO NOT COMPLETE, SAMPLE ONLY___ License Number _____
Is the broker of (check one): ☐ the buyer; or ☐ both the buyer and seller. (dual agent)
Buyer's Agent ___DO NOT COMPLETE, SAMPLE ONLY___ License Number _____
Is (check one): ☐ the Buyer's Agent. (salesperson or broker associate); or ☐ both the Buyer's Agent and the Seller's Agent. (dual agent)

**(d)** The disclosures and confirmation required by this section shall be in addition to the disclosure required by Section 2079.14. An agent's duty to provide disclosure and confirmation of representation in this section may be performed by a real estate salesperson or broker associate affiliated with that broker.

**2079.18** (Repealed pursuant to AB-1289, 2017-18 California Legislative session)

**2079.19** The payment of compensation or the obligation to pay compensation to an agent by the seller or buyer is not necessarily determinative of a particular agency relationship between an agent and the seller or buyer. A listing agent and a selling agent may agree to share any compensation or commission paid, or any right to any compensation or commission for which an obligation arises as the result of a real estate transaction, and the terms of any such agreement shall not necessarily be determinative of a particular relationship.

**2079.20** Nothing in this article prevents an agent from selecting, as a condition of the agent's employment, a specific form of agency relationship not specifically

___DS___                                    ___DS___
𝓨𝓔                                         𝓚𝓡
_____                                    _____
INITIALS                                    INITIALS

prohibited by this article if the requirements of Section 2079.14 and Section 2079.17 are complied with.

**2079.21 (a)** A dual agent may not, without the express permission of the seller, disclose to the buyer any confidential information obtained from the seller. **(b)** A dual agent may not, without the express permission of the buyer, disclose to the seller any confidential information obtained from the buyer. **(c)** "Confidential information" means facts relating to the client's financial position, motivations, bargaining position, or other personal information that may impact price, such as the seller is willing to accept a price less than the listing price or the buyer is willing to pay a price greater than the price offered. **(d)** This section does not alter in any way the duty or responsibility of a dual agent to any principal with respect to confidential information other than price.

**2079.22** Nothing in this article precludes a seller's agent from also being a buyer's agent. If a seller or buyer in a transaction chooses to not be represented by an agent, that does not, of itself, make that agent a dual agent.

**2079.23 (a)** A contract between the principal and agent may be modified or altered to change the agency relationship at any time before the performance of the act which is the object of the agency with the written consent of the parties to the agency relationship.  **(b)** A lender or an auction company retained by a lender to control aspects of a transaction of real property subject to this part, including validating the sales price, shall not require, as a condition of receiving the lender's approval of the transaction, the homeowner or listing agent to defend or indemnify the lender or auction company from any liability alleged to result from the actions of the lender or auction company. Any clause, provision, covenant, or agreement purporting to impose an obligation to defend or indemnify a lender or an auction company in violation of this subdivision is against public policy, void, and unenforceable.

**2079.24** Nothing in this article shall be construed to either diminish the duty of disclosure owed buyers and sellers by agents and their associate licensees, subagents, and employees or to relieve agents and their associate licensees, subagents, and employees from liability for their conduct in connection with acts governed by this article or for any breach of a fiduciary duty or a duty of disclosure.

**AIR CRE  *  https://www.aircre.com  *  213-687-8777  *  contracts@aircre.com**
**NOTICE:  No part of these works may be reproduced in any form without permission in writing.**


INITIALS


INITIALS

© 2019 AIR CRE.  All Rights Reserved.

AD-3.01, Revised 06-10-2019

Last Edited: 4/24/2020 10:41 AM